UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
RACHAEL BAILEY individually and as legal guardian of
N. B. a minor, MELVIN BAILEY individually and as legal
guardian of N. B. a minor,  BLAYTON WEBSTER

                    Plaintiffs,

-against-

KEVIN SULLIVAN; THE CITY OF NEW YORK; NEW
YORK CITY POLICE DEPARTMENT 63RD POLICE
PRECINCT, individually and as an agent of THE NEW
YORK CITY POLICE DEPARTMENT; VADIM
KONTROROVICH (SHIELD #: 27420), individually and
as a member of the NEW YORK CITY POLICE
DEPARTMENT 63RD POLICE PRECINCT; LOIS M
DIAGIANNI; ERIC GONZALEZ IN HIS CAPACITY AS
KINGS COUNTY DISTRICT ATTORNEY; and THE
LEGAL AID SOCIETY KINGS COUNTY.

                    Defendants.
-------------------------------------------------------------------- x

INDEX#: 17-5320

**SECOND**
**AMENDED**
**COMPLAINT AND**
**JURY DEMAND**

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief for among other acts and or omissions, the violation of their rights secured by 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and the constitution of the State of New York.

2.    The claims arise from an incident that occurred on or about May 2, 2013 wherein which Kevin Sullivan made a false report to members of the New York City Police Department, specifically to Officer Vadim Kontorvich Shield # 27420.

3.    As a direct result of Mr. Sullivan's false report and the failure of the New York City Police Department to investigate the allegations pertinent to said incident, Plaintiff, Rachael Bailey, was unlawfully and unjustly arrested by members of the New York City Police department and was subsequently found to be in violation of a Criminal Court Order of Protection issued under Criminal Court Docket #: 2011KN048754 and became subject of Immigration Court Removal Proceedings.

4.    Moreover, members of the New York City Police Department exercised excessive force

during the course of the arrest of the Plaintiff, Rachael Bailey, on May 2, 2013, which caused the Plaintiff, Rachael Bailey, to sustain substantial injuries.

5.  Moreover Plaintiff N. B. a minor was diagnosed with Post Traumatic Stress Disorder as a result of the unlawful and discriminatory arrest of the Claimant on May 2, 2013.

6.  Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

7.  Plaintiff Blayton Webster was also arrested and charged based on false allegations filed by Defendant Kevin Sullivan's false claims.

8.  The New York City Police Department also failed to properly investigate these claims and contributed to the damages now complained of.

9.  The Legal Aid Society Kings County represented Plaintiffs Rachael Bailey and Blayton Webster during the criminal court phase of the case.

10. The Legal Aid Society did not provide adequate legal representation and failed to handle the criminal cases with the requisite level of skill, care and expertise another attorney similarly situated as the Legal Aid Society would have.

11. As a result, of the Legal Aid's Society's malpractice and ineffectiveness, Rachael Bailey ended up in Immigration Custody for several months, was denied adjustment of status, incurred legal fees and costs she would not have otherwise incurred.

**THIS ACTION IS TIMELY**

12. This action involves State Court claims as well as Federal claims against the Defendants.

13. It is submitted that the Plaintiffs' action is timely and thus the Court should permit the Defendants to proceed accordingly.

14. The Plaintiffs, have issues that continue to present daily.

15. The acts and or omissions by Defendants against Plaintiffs' interest are on-going and the

time to pursue the claims Plaintiffs have against Defendants has not run.

16. Plaintiff N.B. is a minor and will not reach the age of majority for at least five years. Thus, the statutory time frames relevant here as to Plaintiff N.B. have not begun and therefore have not ran.

17. As to Plaintiff Blayton Webster, Melvin Bailey and Racheal Bailey, the time to bring this action has not run because Plaintiffs continue to suffer the indignities and legal consequences of the acts and omission carried out by Defendants as against Plaintiffs' interest.

18. Plaintiff Blayton Webster did not learn of the malpractice committed by the Legal Aid Society and could not have learned of the same until he suffered the indignities that are associated with the plea.

19. Mr. Webster had difficulties becoming an American citizen, and still has to report the plea as a conviction to prospective employers. More importantly, Mr. Webster could not pursue any claims against the joint-tortfeasors who are named in addition to the Legal Aid Society because the Defendants actions individually and collectively, made it impossible for Mr. Webster to pursue remedies.

20. Plaintiff Rachael Bailey is still fighting the removal case and has recently been denied adjustment of status yet again as a direct result of the acts and omissions complained of above and below herein.

21. Plaintiff Melvin Bailey, continues to suffer the emotional crisis that has resulted from the acts and omissions committed by the Defendants against him.

## **JURISDICTION**

22. This action is brought pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

23. The amount in controversy exceeds $75,000.00 excluding interest and costs.

24. Venue is laid within the United States District Court for the Eastern District of New York in that Defendants are all located in or within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

25. Since it is submitted that the Court has jurisdiction to hear the Federal Court causes of action listed below herein, this Court should recognize the Plaintiffs' right to invoke the supplemental jurisdiction of this Court to adjudicate the pendent State law claims pursuant to 28 U.S.C. §1367.

## **PARTIES**

26. At all times relevant to this action, Plaintiff RACHAEL BAILEY, individually, hereafter referred to as "Ms. Bailey" or "Plaintiff 1" was a resident of the State of New York, Kings County.  Ms. Bailey is currently of resident of the State of New York, Kings County

27. At all times relevant to this action, Plaintiff, MELVIN BAILEY, individually, hereafter referred to as "Mr. Bailey" or "Plaintiff 2") is the husband of Rachael Bailey and is a resident of the State of New York, Kings County.

28. At all times relevant to this action, Plaintiffs MELVIN BAILEY and RACHAEL BAILEY appearing jointly as the legal Guardians of Plaintiff N. B. a minor under the age of 18 years old, (hereafter referred to as "Ms. N. B ." or "Plaintiff 3") . Ms. N. B currently of resident of the State of New York, Kings County

29. At all times relevant to this action Plaintiff, BLAYTON WEBSTER hereafter referred to as ("Mr. Webster" or "Plaintiff 4") is the son of Rachael Bailey and is a resident is a resident of the State of New York, Kings County. Mr. Webster is currently of resident of the State of New York, Kings County

30. At all times relevant to this action, Defendant, KEVIN SULLIVAN hereafter referred to as ("Mr. Sullivan" or "Defendant 1"), is believed to be a resident of the State of New York,

Kings County.

31. Defendant, THE NEW YORK CITY POLICE DEPARTMENT, is a municipal agency of the Defendant, CITY OF NEW YORK.

32. Defendant, THE 63 PRECINCT OF THE NEW YORK CITY POLICE DEPARTMENT, is a branch of Defendant, THE NEW YORK CITY POLICE DEPARTMENT, is a municipal agency of the Defendant, CITY OF NEW YORK.

33. Defendant, CITY OF NEW YORK, is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risk identical to the maintenance of a police force and the employment of Police Officers. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of the Defendant Police Officer VADIM KONTROROVICH (SHIELD #: 27420), and Police Officer JOHN DOE# 1-15.

34. Defendants, Police Officer VADIM KONTROROVICH (SHIELD #: 27420) and JOHN DOE 1-15, is and were at all time relevant herein duly appointed and acting officers, servants, employees and agents of the 63 Police Precinct of the New York City Police Department a municipal agency of the Defendant CITY OF NEW YORK.

35. Defendant LOIS M. DIAGIANNI was at all times relevant herein, the owner of the premises known as 1430 East 54th Street, Brooklyn, NY 11234 and therefore Defendant Sullivan remained at the premises and continued his pattern of harassment and abuse due to her negligence or consent.

36. Defendant ERIC GONZALEZ in his capacity as acting Kings County District Attorney, The Prosecuting Agent of the County of Kings which maliciously prosecuted Plaintiff Rachael Bailey.

37. At all times relevant herein defendants, KONTROROVICH and DOE 1-15, were acting under color of the laws, statutes, ordinances, regulation, policies, customs and/or usages of the State of New York and the New York City Police Department, in the course and scope of the their duties and function as officers, agents, servants, and employees of the Defendant CITY OF NEW YORK, were acting for , and on behalf of, and with the power and authority vested in them by the CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT, and were otherwise performing and engaging in conduct incidental to the performance of their lawful function in the course of their duties. They are being sued individually and in their official capacity.

38. By the conduct, acts, and omissions complained of herein, defendants, KONTROROVICH and DOE #1-15, violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments of the United States Constitution of which reasonable police officer under the circumstances would have known.

39. Moreover, by the conduct and acts of Defendant, Sullivan, caused Defendants KONTROROVICH and DOE #1-15, to violate clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments of the United States Constitution of which reasonable police officer under the circumstances would have known.

## **FACTUAL ALLEGATIONS**

40. On or about December 15, 2006, Plaintiff, Melvin Bailey, purchased a piece of real property in the State of New York and County of Kings (Block# 7851, Lot# 68) commonly known as 1432 EAST 54 STREET, BROOKLYN NY 11234.

41. Since that time, Plaintiffs, Mr. Bailey, Ms. Bailey, N.A Bailey and Mr. Webster, peacefully resided at 1432 EAST 54 STREET, BROOKLYN NY 11234 and maintained a positive relationship with their neighbors.

42. At some point in 2007, Plaintiffs, Mr. Bailey, Ms. Bailey, N. B. and Mr. Webster met the

Defendant, Mr. Sullivan, who introduced himself as the boyfriend of an under tenant of the premises known as 1430 EAST 54 STREET, BROOKLYN NY 11234.

43. On or about November 1, 2007, Defendant, Kevin Sullivan, moved next door to the plaintiffs and began to reside at the premises known as 1430 EAST 54 STREET, BROOKLYN NY 11234.

44. Upon information and belief, Defendant, Mr. Sullivan, is not the owner of the premises commonly known as 1430 EAST 54 STREET, BROOKLYN NY 11234 nor is he a legal tenant of said premises.

45. According to property records maintained by the New York City Department of Finance, the property known as 1430 East 54th Street is owned by Lois M. Digianni.

46. Since that time Defendant, Mr. Sullivan, has harassed, harangued and made false reports about the Plaintiffs to members of the New York City Police Department as well as other New York City agencies.

47. On numerous occasions since 2007 the defendant, Mr. Sullivan has harassed, threatened, made false reports and has antagonized the plaintiffs jointly and individually.

48. The contention between the Defendant, Mr. Sullivan, and Plaintiffs stems from the parties use of the "shared driveway" between premises known as 1432 EAST 54 STREET, BROOKLYN NY 11234 and the premises known as 1430 EAST 54 STREET, BROOKLYN NY 11234.

49. On or about November 30, 2007, Defendant, Sullivan, started to argue with Plaintiffs, Ms. Bailey and Mr. Bailey, about their use of the shared driveway.

50. Defendant, Mr. Sullivan, did not want the plaintiffs to use the shared driveway arguing that the plaintiff's vehicle was causing the premises known as 1430 EAST 54 STREET, BROOKLYN NY 11234 to sink.

51. It is to be noted that according to the records maintained by the New York City Office of

the Register, the Indenture made with reference to the premises known as 1430 EAST 54 STREET, BROOKLYN, NY 11234 (Block# 7851 and Lot# 24) clearly states that said premises was subject to two easements, the first being 3 ft 6 in to the southern side of the property and the second being 3ft 6in to the north of the property.

52. Both Easements were provided for the purpose of a driveway and access to the rear of these premise, (1430 EAST 54 STREET, BROOKLYN, NY 11234) and the premises adjoining on the south, (1432 EAST 54 STREET, BROOKLYN NY 11234) and were to be used in common by the owners of the respective properties for the purpose of free and unobstructed ingress and egress at all times to the street.

53. Moreover, the Plaintiffs were informed by their brokers at Closing that they would have access to the driveway as described above herein.

54. As a result of this, the Plaintiffs legally continued their shared use of the Driveway as provided by the easement.

55. Prior to the arrival of the Defendant, Mr. Sullivan, the Plaintiffs, Mr. Bailey, Ms. Bailey, N. B. and Mr. Webster, legally and peacefully enjoyed access to their driveway and the unobstructed access to the rear of their premises.

56. Once the Defendant, Mr. Sullivan, moved next door, the plaintiffs were deprived of their access to their driveway and became the targets of the Defendant's vindictive and malicious acts as and false reports.

57. At some point in spring of 2008, the Mr. Sullivan made a complaint to the New York City Police Department, wherein which Mr. Sullivan complained to the members of the New York City Police Department about the Plaintiff's use of the shared driveway.

58. When members of the New York City Police department arrived at 1430 EAST 54 STREET, BROOKLYN NY 11234, in response to Mr. Sullivan's complaint, they informed the plaintiffs that plaintiffs could not park their vehicle in the shared driveway

anymore.

59. At that time, members of the New York City Police department made no inquires of the Plaintiffs about their ownership of the premises located at 1430 EAST 54 STREET, BROOKLYN, NY 11234 or the easement recorded in the New York City Department of Finance Records.

60. The Members of the New York City Police Department had the resources and the opportunity to inspect the records maintained by the New York City Office of the Register to ascertain information about the ownership and right of access to the shared driveway at issue nevertheless they failed to do so.

61. Instead, members of the New York City Police department made the sua sponte decision to verbally revoke the plaintiffs' lawful right of access to the Driveway located between the premises known as 1432 EAST 54 STREET, BROOKLYN NY 11234 and the premises known as 1430 EAST 54 STREET, BROOKLYN NY 11234.

62. In light of the foregoing the Plaintiffs limited their use of the shared Driveway.

63. However, this did not stop Mr. Sullivan from harassing, haranguing and/or making false reports against the Plaintiffs.

64. At some point in the spring of 2010, Mr. Sullivan developed the habit of obstructing the shared driveway with his garbage and other pieces of debris; and placing uncollectable construction debris into the Plaintiff's trash cans

65. Said garbage and debris would, at times, extend past the shared driveway and on to the Plaintiff's front lawn and/or directly in front of the Plaintiff's property.

66. On one occasion, members from the New York City Department of Sanitation went to the home of the plaintiff located at 1430 EAST 54 STREET, BROOKLYN NY 11234, in response to a complaint made about construction debris left in a black garbage bag in front to the plaintiff's premises.

67. Before the Sanitation officer issued a violation to the plaintiffs, he had the opportunity to speak with the Plaintiff, Rachel Bailey, who informed him that she had just returned from work and that no construction or renovations had taken place at their premises by escorting the officer into her home and the rear of her premises.

68. While in the rear of the Premises, Plaintiff, Rachel Bailey, and the Sanitation Officer observed that construction and/or renovations had recently occurred in the premises located at 1432 EAST 54 STREET, BROOKLYN NY 11234.

69. In light of the foregoing, the Sanitation officer did not issue a sanitation violation to the Plaintiff, Rachel Bailey.

70. Thereafter, in the winter of 2010, Plaintiff, Rachel Bailey, came home to discover a large black garbage bag with cinder blocks and other construction debris directly in front of her premises.

71. Plaintiff, Rachel Bailey, could also observe from the rear of her premises that construction and/or renovation work was still being done at the premises located at 1430 EAST 54 STREET, BROOKLYN NY 11234.

72. In light of the foregoing, Plaintiff, Rachel Bailey, contacted the New York City Police Department and made a complaint.

73. When a member of the New York City Police Department arrived at 1432 EAST 54 STREET, BROOKLYN NY 11234 they spoke to Plaintiff, Rachel Bailey, who informed them that someone from the premises located at 1430 EAST 54 STREET, BROOKLYN NY 11234 had left construction debris directly in front of her home.

74. Plaintiff, Ms. Bailey, further informed the officer of the abovementioned incident with the Sanitation Department that occurred early that year.

75. The officer then knocked on the front door of the premises located at 1430 EAST 54 STREET, BROOKLYN NY 11234 however the officer got no response.

76. Thereafter, the Officer instructed Plaintiff, Rachel Bailey, who was 42 years old at the time, to take the black garbage bag containing cinder blocks back to the rear of her premises and keep the same until the next trash cycle.

77. The Officer made no further attempt to contact the Defendant Mr. Sullivan and/or issue any citations to the owners of the premises known as 1430 EAST 54 STREET, BROOKLYN NY 11234.

78. The Officer made no additional attempt to follow up on Plaintiff Rachel Bailey's complaint and essentially instructed her to handle the issue by herself.

**FACTUAL ALLEGATIONS AROUND THE FIRST ARREST ON MAY 10, 2011**

79. Thereafter, the Defendant, Mr. Sullivan continued harassing, haranguing and making false reports against the Plaintiffs.

80. On or about May 10, 2011, Plaintiff, Mr. Webster, drove to visit his mother at her home located at 1432 EAST 54 STREET, BROOKLYN NY 11234.

81. Plaintiff, Mr. Webster, parked his car in front of the premises located at 1430 EAST 54 STREET, BROOKLYN NY 11234 and went in to have dinner with his family.

82. While having dinner with his family Mr. Webster heard banging noises coming from the direction of his vehicle.

83. When Mr. Webster went out on his porch to investigate, there he observed the Defendant, Mr. Sullivan, tossing garbage bags alongside and on top of the Plaintiff, Mr. Webster's, car.

84. In light of this, Plaintiff, Mr. Webster, asked the Defendant, Mr. Sullivan, what he was doing and a verbal dispute ensued between the two.

85. Plaintiff, Rachel Bailey, was inside of the home when the verbal altercation began between her son, Mr. Webster, and the Defendant, Mr. Sullivan, and could hear the words being exchanged between the two.

86. Plaintiff, Rachel Bailey, overheard Defendant, Mr. Sullivan, call her son a nigger, demanded that her son and his family get the fuck out of the neighborhood and go back to your country and threaten to call the police on her son to have him shot or locked up.

87. In light of this, Plaintiff, Rachel Bailey, also stepped out on the porch and instructed her son to go back inside as Mr. Sullivan was "sick in the head."

88. The comments made by the Plaintiff, Rachel Bailey, further infuriated the Defendant, Mr. Sullivan, who again threatened to call the police and have the Plaintiff, Ms. Bailey and her son, Plaintiff Mr. Webster, locked up.

89. The verbal altercation between Plaintiffs, Ms. Bailey and Mr. Webster, caused a great commotion in the community and several members of the neighborhood stepped outside of their respective houses to view the same.

90. Mr. Sullivan then exited the street and returned to his home at 1430 EAST 54 STREET, BROOKLYN NY 11234.

91. About 20 minutes thereafter, approximately 20 marked vehicles from the New York City Police department arrived at 54 Street.

92. Plaintiff, Rachel Bailey, observed the officer go directly to the Defendant, Mr. Sullivan's place of residence located at 1430 EAST 54 STREET, BROOKLYN NY 11234 before proceeding to a house a few doors down.

93. Thereafter, members of the New York City Police Department went to the home of the Plaintiffs, 1432 EAST 54 STREET, BROOKLYN NY 11234, and demanded to see Plaintiff, Rachel Bailey, and Plaintiff, Mr. Webster.

94. The members of the New York City Police Department informed Plaintiff, Rachel Bailey, and Plaintiff, Mr. Webster, that they were informed by Defendant, Mr. Sullivan, that Mr. Webster had assaulted him and that Ms. Bailey had chased him with a machete.

95. At no point did the Officers ask the Plaintiffs about the incident that just occurred.

96.   Moreover, the Officer willfully ignored the testimony of the numerous individuals who were present at the time of the incident and witnessed the verbal altercation between Plaintiffs, Mrs. Bailey and Mr. Webster, and the Defendant Mr. Sullivan.

97.   Thereafter, on May 10, 2011, Plaintiffs, Mrs. Bailey and Mr. Webster were arrested in Kings County and was charged with the following crimes:

        a.   ASSUALT IN THE THIRD DEGREE in violation of New York State Penal Law §120.00;

        b.   MENACING IN THE SECOND DEGREE in violation of New York State Penal Law §120.14;

        c.   MENACING IN THE THIRD DEGREE in violation of New York State Penal Law §120.15; and

        d.   HARRASSMENT IN THE SECOND DEGREE in violation of New York State Penal Law §240.26.

98.   That matter was prosecuted under Kings County Criminal Court Docket Number: 2011KN048754.

99.   Upon information and belief, Plaintiff, Ms. Bailey, dissented and disagreed with the charges and the time of her arrest and all throughout the course of the proceedings that were held under Kings County Criminal Court Docket Number 2011KN048754.

100.   Plaintiff, Ms. Bailey, could not afford an attorney at the time of her arrest and as legal Aid attorney was assigned to her.

101.   Plaintiff, Ms. Bailey, informed her legal aid attorney that she was lawfully present in the United States and that she was in the process of adjusting her immigration status.

102.   Plaintiff, Ms. Bailey, was then informed by her attorney that the some of the charges pending against her Kings County Criminal Court Docket Number 2011KN048754 carried consequences that might adversely affect her immigration applications if she was found

guilty.

103. Plaintiff, Ms. Bailey, legal aid attorney was able to secure an plea offer of from the Kings County District Attorney's Office wherein which the Plaintiff, Ms. Bailey, would enter of a Plea of Guilty to the lesser charge of DISORDERLY CONDUCT in violation of New York State Penal Law § 240.20.

104. The advice that was given to Ms. Bailey was erroneous and had no basis in immigration law.

105. The Legal Aid attorney induced Ms. Bailey to enter a plea by claiming erroneously that Ms. Bailey had no choice but to accept the plea deal to avoid serious immigration consequences.

106. But for this erroneous advice, Ms. Bailey would have fought the charges and would have opted to go to trial because she had an actual claim of innocence.

107. Plaintiff's Legal Aid Attorney erroneously advised Plaintiff, Ms. Bailey, to enter the plea of guilty to the charge of Disorderly Conduct as the same was a violation that did not carry immigration consequences.

108. Plaintiff, Ms. Bailey, relied on the Legal Aid attorney's advice and pled guilty to the lesser charge of DISORDERLY CONDUCT in violation of New York State Penal Law §240.20 on November 27, 2012 with a full order of protection being issued to Mr. Sullivan based on his false claims to the police.

109. This resulted in a non-criminal, non-jail disposition for Plaintiff, Ms. Bailey and Mr. Webster.

110. Plaintiff, Ms. Bailey and Mr. Webster, were sentenced to a One Year Conditional Discharge and were made to pay fines and surcharges in the amount of $120.00.

111. On November 27, 2012, an Order of Protection was also issued against Plaintiff, Ms. Bailey and Mr. Webster, which directed them to stay away from the Defendant, Kevin

Sullivan, which was scheduled to stay in effect until November 26, 2014.

112. Likewise, on May 10, 2011, Plaintiff, Mr. Webster, was also arrested and prosecuted in Kings County: and was charged with the following crimes:

    a. ASSUALT IN THE THIRD DEGREE in violation of New York State Penal Law §120.00;

    b. MENACING IN THE SECOND DEGREE in violation of New York State Penal Law §120.14;

    c. MENACING IN THE THIRD DEGREE in violation of New York State Penal Law §120.15; and

    d. Harassment in the Second Degree in violation of New York State Penal Law § 240.26.

113. That matter was prosecuted in Kings County Criminal Court.

114. Plaintiff, Mr. Webster, could not afford an attorney at the time of his arrest and a legal Aid attorney was assigned to him.

115. Over the course of the Matter that was pending in Kings County, Plaintiff Mr. Webster's, legal aid attorney became aware of Plaintiff, Ms. Bailey's, immigration status as well as the plea offer secured by Plaintiff's, Ms. Bailey, legal Aid Attorney.

116. In light of the foregoing, Plaintiff Mr. Webster's, Legal Aid also encouraged him to accept a plea offer to the lesser charge of DISORDERLY CONDUCT in violation of New York State Penal Law §240.20 so as to quickly resolved the matter pending against him and his mother without incurring any adverse immigration consequences.

117. Plaintiff, Mr. Webster, also relied on the erroneous advice of his Legal Aid attorney and pled guilty to the lesser charge of DISORDERLY CONDUCT in violation of New York State Penal Law § 240.20 on November 27, 2012.

118. This resulted in a non-criminal, non-jail disposition for Plaintiff, Mr. Webster.

119. Plaintiff, Mr. Webster, was sentenced to a One Year Conditional Discharges and she was made to pay fines and surcharges in the amount of $120.00.

**FACTUAL ALLEGATIONS AROUND THE SECOND ARREST ON MAY 2, 2013**

120. Thereafter the Defendant, Mr. Sullivan continued his pattern of harassing, haranguing and making false reports against the Plaintiffs.

121. In the summer of 2012, Plaintiffs, Melvin Bailey and Rachael Bailey were in their yard cleaning.

122. At some point during the day, defendant Sullivan began verbally berating Plaintiff Rachael Bailey while she was in her yard with her family.

123. Plaintiff, Rachael Bailey went inside of her home and called the Police to the premises.

124. Police arrived on scene and completely ignored Mrs. Bailey and refused to take a statement from her, instead telling her to remain inside her home.

125. Despite being called by Plaintiff, Rachael Bailey, Officer Vadim Kontorovich, went to the premises known as 1430 East 54th Street and spoke with Mr. Sullivan.

126. After speaking with Mr. Sullivan, Officer Kontorovich and his partner called Mrs. Bailey from her residence and forcefully arrested her.

127. This arrest took place in front of Plaintiff Rachael Bailey's family, including her ten year old daughter, N. B. a minor child.

128. Witnessing her mother forcefully arrested and thrown against a wall has left N. B. traumatized and emotionally scarred.

129. N. B. has been diagnosed with Post Traumatic Stress Disorder resulting from witnessing her mother arrested with such excessive force.

130. N. B. is now doing poorly in school, began bedwetting, has extreme anxiety and has been placed in a special education program.

131. These symptoms all manifested after the arrest of Plaintiff Rachael Bailey that took place

on May 02, 2013.

132. Rachel Bailey was detained by the police, and then immediately turned over to Immigration and Customs Enforcement (I.C.E.) and placed in Removal Proceedings.

133. Plaintiff, Rachael Bailey remained in I.C.E. custody for several months during which time she had significant difficulty contacting her family.

134. This extended absence contributed significantly to the trauma suffered by Plaintiff, N. B.

135. Not only was this incredibly traumatic emotionally, but also financially for Plaintiffs.

136. Plaintiffs were forced to retain the services of an attorney for immigration and criminal matters.

137. Plaintiffs, Rachael Bailey was forced to defend herself from the false accusations of Mr. Sullivan at trial in Kings County Criminal Court due to the potentially devastating immigration consequences she faced.

138. Despite prevailing at trial, Plaintiff, Rachael Bailey was still financially liable for the fees associated with retaining an attorney for her Criminal Court trial as well as protecting her from deportation in Immigration Court.

139. It is worth noting that the District Attorney's office maintained that there was no evidence that Mrs. Bailey was the one who called the police in 2012.

140. The District Attorney's office Kings County maintained that Mr. Sullivan was the one who called the police.

141. However, after the trial concluded, the Judge found Ms. Bailey not guilty of the charges and cited the fact that in listening to the 911 tapes, it is clear that Mrs. Bailey called the police as the dispatcher dispatched the police to Ms. Bailey's residence not Mr. Sullivan's.

142. Despite this fact, the police went directly to Mr. Sullivan's residence and even took the time to tell Mrs. Bailey in sum and substance that, this is a nice neighborhood why have

you come here starting trouble.

143. Plaintiff, Rachael Bailey has been forced to spend thousands in pursuit of gaining lawful status, a process that would have been trivial were it not for the two arrests caused by the falsehoods and abuses of Kevin Sullivan, the malicious prosecution of the Kings County District Attorney and lazy and negligent policing conducted by Officer Kontorovich who was openly contemptuous of Rachael Bailey whom he accused of ruining the neighborhood.

144. More importantly, but for the erroneous advice given to Mrs. Bailey by the Legal Aid Attorney, Mrs. Bailey would not have been subjected to the hardship, damages, and loss that she incurred.

145. N.B. would not have been traumatized so drastically.

146. Mr. Bailey, would not have loss of consortium and all the issues that flowed proximately from having his family ripped apart.

147. The evidence of malicious intent by the Kings County District Attorney's office lies in the fact that during the course of Criminal Court proceedings, Counsel for Plaintiff Rachael Bailey repeatedly requested that the Kings County District Attorney turn over the recordings of the 911 tapes that called the police to the premises known as 1432 East 54th Street, Brooklyn, NY 11234.

148. The District Attorney's Office did not furnish this recording to Counsel until trial.

149. This piece of evidence proved critical as Justice Farber's decision to find Plaintiff, Rachael Bailey not guilty was largely based on the fact that the officers were dispatched to 1432 East 54th Street.

150. It is incredibly unlikely that the police would be dispatched to the home of the perpetrator and not the victim.

151. The evidence of liability for the Legal Aid Society lies in the fact that the law makes it

clear that an attorney must handle the cases assigned to them with the same level of care as other attorneys similarly situated as them.

152. The Legal Aid Society was ineffective and their ineffectiveness caused and or contributed to the damages Plaintiffs now complain of.

153. The Legal Aid Society's representation fell below an objective standard of reasonableness, and the Plaintiffs suffered prejudice as a result of the Legal Aid Society's deficient performance and erroneous advice and ineffectiveness. *Strickland v. Washington*, 466 U.S. 668.

154. In the Plaintiffs' case, the Legal Aid Society's erroneous advice, ineffectiveness and failure to meet the standard of care required for legal representation, the Plaintiffs entered an ill-advised guilty plea, and were prejudiced because but for the Legal Aid Society's acts and or omissions, the Plaintiffs would not have pleaded guilty and would not have suffered the damages now complained of. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

155. If the Plaintiffs knew the extent of the immigration consequences that resulted were probable, the Plaintiffs would have made a decision to reject the plea bargain and such decision would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *People v. Picca*, 97 A.D.3d 170, 179 2nd Dep't 2012.

156. The District Attorney's Office is liable because but for the withholding of evidence, the failure to properly investigate and to pursue Ms. Bailey's complaint about the hate crimes committed against the Plaintiffs by Mr. Sullivan, this matter would not have proceeded to trial and Mrs. Bailey would not have suffered the trauma, financial burdens and other damages being complained of.

157. The District Attorney's Office represents the People of the State of New York and bay all accounts, the Plaintiffs are "People" who live in the State of New York.

158. The District Attorney Kings County made a conscious decision to ignore the malicious and

unlawful acts committed against the Bailey's by Mr. Sullivan, and basically ratified the bad behavior of the New York City Police Department against the Plaintiffs.

159. Here, the Plaintiffs have shown that the District Attorney's office had ever opportunity to conduct the basic inquiries that would have prevented the initiation or continuation of the criminal prosecution against the Plaintiffs.

160. The case was terminated after trial in Plaintiff's favor.

161. There was not probable cause to commence the proceeding as the District attorney's Office Kings County was made aware that this case stemmed from hate crimes committed against the Plaintiffs by the Defendant Mr. Sullivan and the District Attorney's Office ignored even evidence that their very office possessed in furtherance of proceeding with the malicious prosecution of Plaintiffs.

162. The District Attorney's Office ratified the bad behavior of the police department in direct contravention of law and therefore, Plaintiffs case should proceed. (Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248; Broughton v. State of New York, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 [also discusses malicious prosecution as distinct from false arrest], cert. denied sub. nom. Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257).

163. LOIS M DIAGIANNI, is liable to the Plaintiffs because Lois M. Diagianni knew or should have known that Kevin Sullivan was engaging in malicious acts against the Plaintiffs and Lois M. Diagianni did not take any steps to prevent, remedy or resolve Ken Sullivan's actions against Plaintiffs.

164. The basis for stating this is that on several occasions when Kevin Sullivan engaged in the behavior described above herein and other behaviors against Plaintiffs' interest, Lois M. Diagianni was observed standing in close proximity to Kevin Sullivan and Lois M. Diagainni took no steps to prevent Kevin Sullivan from acting.

165. Upon information and belief, Kevin Sullivan was acting under color of authority derived from Lois M. Diagianni.

166. Upon information and belief, during the trial of Rachael Bailey, Kevin Sullivan stated in no uncertain terms that he Kevin Sullivan had a vested financial interest of $80,000 in the premises owned by Lois M. Diagianni.

167. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983

168. The above paragraphs are here incorporated by reference.

169. The officer defendants wrongfully, illegally, and unjustifiably arrested, detained, imprisoned, and falsely charged plaintiff, depriving her of her liberty.

170. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

171. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

172. All of this occurred without any illegal conduct by plaintiff.

173. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the United States Constitution.

174. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

175. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

176. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## SECOND CAUSE OF ACTION
MUNICIPAL LIABILITY

177. The above paragraphs are here incorporated by reference.

178. The City is liable for the damages suffered by plaintiff because, after learning of its employees' violations of New Yorkers' constitutional rights, the City has: failed to remedy the wrong; created a policy or custom under which unconstitutional practices regularly occur and even thrive; and has been grossly negligent in managing subordinates who cause the unlawful events. The result of the City's inaction is a culture within the NYPD where the same officers, the same units, and the same precincts repeatedly and routinely engage in acts of misconduct. By failing to properly train, supervise, and discipline its employees, agents, and servants, the City effectively encourages illegal, immoral, and unprofessional behavior.

179. On numerous occasions over the span of many years, the City of New York has been alerted to the regular use of excessive force and the frequency of false arrests charges

brought by its police officers. Despite having acquired such knowledge, the City has refused to appropriately sanction its employees' illegal behavior.

180. The City's deliberate indifference to civil rights violations committed by individual police officers, as well as patterns of misconduct committed by the same officers or occurring in the same precinct has caused the constitutional violations against Plaintiff in this case.

181. As a result of the New York State constitutional violations complained of, the Plaintiffs are entitled to fair and just compensation for the loss of the integrity and stability of the family units.

182. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

183. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

### THIRD CAUSE OF ACTION
INEFFECTIVE ASSISTANCE OF COUNSEL
(LEGAL AID SOCIETY)

184. The above paragraphs are here incorporated by reference.

185. The Legal Aid Society failed to provide the Plaintiffs with effective assistance of competent counsel during all phases of the proceedings brought against Plaintiff in Kings County. Strickland v. Washington, 466 US 668 [1984].

186. The Plaintiffs have established both that the Legal Aid Society gave erroneous advice that resulted in serious immigration consequences, detention and hardship for Plaintiffs that are articulated above herein. People v. Glasgow, 2012 NY Slip Op 3479 [3rd Dept. 2012],

citations omitted.

187. The legal Aid Attorney that handled the Plaintiffs' case fell below an objective standard of reasonableness and but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, supra; see also, People v. Baldi, 54 NY2d 137 [1981].

188. The Legal Aid Attorney's failure to properly advise the Plaintiffs of the true consequences associated with the plea that was advised is in effective assistance of counsel. People v Besser, 96 NY2d 137 [2001]; Cornell v. Fitzpatrick, 665 F3d 369 [2nd Cir. 2011].

189. Both the Federal and New York Constitution(s) guarantee a criminal defendant the right to effective assistance of counsel. U.S. Constitution, Am. VI; see also McMann v. Richardson 397 US 759 n. 14 [1970]; NYS Constitution, Article 1, §6. An attorney must render "reasonably effective assistance." People v. Benevento, 91 NY2d 708, 712 [1998]; see also United States v. Cohen, 427 F3d 164, 167 [2nd Cir. 2005]. In New York, effective assistance of counsel is found when "...the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation." People v. Baldi, supra, at 147.

190. The services provided by the Legal Aid Society in this instance was not competent, reasonable, and was not devoted to Plaintiffs' best interest. People v. Benveneto, 91 NY2d at 712.

191. There was nothing unique about this case, a reasonable attorney similarly situated as the Legal Aid Attorney would have bothered to inquire into the devastating consequences of a one year conditional discharge has for a non-lawful permanent resident. See People v. Rivera, 71 NY2d 705 [1998].

192. The ineffectiveness being claimed here goes directly to the plea bargaining and failure to properly advise a client of his or her rights. Mui v. United States, 614 F3d 50 [2nd

24

Cir. 2010]; Michel v. Louisiana, 350 US 91, 101 [1955]; see also People v Berroa, 99 NY2d 134 [2002]; Murray v. Carrier, 477 US 478 [1986]; People v. Brown, 17 NY3d 742 [2011]; Eze v. Senkowski, 321 F3d 110 [2nd Cir. 2003].

193. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

194. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

**FOURTH CAUSE OF ACTION**
CONVERSION
(LOIS M. DIAGIANNI AND KEVIN SULLIVAN)

195. The above paragraphs are here incorporated by reference.

196. By their acts, omissions and false claims, the Defendants prevented the Plaintiff from the use and or enjoyment of their property.

197. The Defendants caused the Plaintiffs to become afraid to go into their back yard, to use their driveway and to enjoy all of the benefits that come from home ownership.

198. The Defendants essentially took ownership and possession of Plaintiffs' interest in the real property.

199. Mr. Sullivan intended to prevent the Plaintiffs from using and enjoying the driveway and backyard; Mr. Sullivan's actions resulted in the exclusion of the Plaintiffs from the driveway and backyard, the Plaintiffs had a legal right to possession of the real property at issue here and Mr. Sullivan's actions were not justified by law or agreement written or oral. See, generally, Leon C. **Lazer**, et al., New York **Pattern Jury Instructions** – Civil § 3.1

(2ded. 2006) (quoting Employers' Fire Ins. Co. v. Cotten, 245 N.Y. Aug 15, 2014.

200. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

201. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

**FIFTH CAUSE OF ACTION**
RACIAL PROFILING AND DISCRIMINATION

202. The above paragraphs are here incorporated by reference.

203. The actions by Defendants collectively were motivated by race and blatant discrimination.

204. This fact is evinced by the Police Officers statements to Plaintiffs.

205. The fact that Mr. Sullivan called the Plaintiffs, "nigger" and other derogatory terms is evidence of bias and discrimination.

206. The fact that the police once dispatched proceeded to Mr. Sullivan, a white man and ignored the person who actually made the 911 call, Mrs. Bailey a black Jamaican immigrant and stated in sum and substance this is a nice neighborhood why are you making trouble to Mrs. Bailey.

207. The District Attorney's office's refusal to entertain Mrs. Bailey's repeated claims of actual innocence and other factors lend to the conclusion that race played an important role here.

208. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues

now being complained of are the direct result of the joint and individual acts of the Defendants.

209. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## SIXTH CAUSE OF ACTION
MALICIOUS PROSECUTION

210. The above paragraphs are here incorporated by reference.

211. The defendants caused and or commenced, pursued and or maintain a criminal prosecution against Plaintiffs.

212. Defendants knew or should have known the allegations were false and or predicated on prejudice, bias or hate.

213. The action was dismissed against Plaintiff.

214. The defendants' actions were malicious at best.

215. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

216. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## SEVENTH CAUSE OF ACTION
HARASSMENT

217. The above paragraphs are here incorporated by reference.

218. Defendants have engaged in a pattern of behavior against Plaintiffs that serves no

legitimate purpose and is intended to harass, annoy and alarm Plaintiffs and to subject Plaintiffs to public humiliation.

219. This behavior by Defendants cause Plaintiffs to worry constantly, to fear physical harm, to have difficulties sleeping and to constantly consider what if anything else Defendants will do to harass Savage.

220. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

221. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## EIGHTH CAUSE OF ACTION
### FAILURE TO PROPERLY INVESTIGATE

222. The above paragraphs are here incorporated by reference.

223. Defendants took no steps to investigate and as a direct result of such failure, Plaintiffs were injured irreparably.

224. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

225. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## NINTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACTS

226. The above paragraphs are here incorporated by reference.

227. The acts by Defendants prevented Plaintiffs from enjoying the easement (contract) that was created when the title was established for the premises at issue here.

228. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

229. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

230. The above paragraphs are here incorporated by reference.

## TENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

231. The above paragraphs are here incorporated by reference.

232. Defendants engaged in extreme outrageous conduct, intentionally, recklessly, wantonly, maliciously and with reckless disregard and caused and continues to cause Plaintiffs to suffer severe emotional distress.

233. That as a direct result of Defendants' intentional, deliberate, malicious, extreme and outrageous conduct Plaintiffs were caused to sustain mental, emotional and/or psychological injuries including but not limited to mental pain and suffering, mental stress,

anxiety, emotional distress, humiliation, mental anguish, shock, emotional pain and suffering, mental distress, damage to reputation, damage to business reputation, damage to business name, damage to business character, damage to business standing and reputation in business community, damage to business to business standing in the medical community, damage to moral and ethical reputation and character, monetary damages and is otherwise damaged, herein.

234. That as a direct and proximate cause of Defendants' actions, Plaintiffs became concerned and fearful that the employment discrimination lawsuit has been compromised and has been considering settling that matter for less than the matter is worth because of this fear.

235. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

236. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## ELEVENTH CAUSE OF ACTION
### BULLYING

237. The above paragraphs are here incorporated by reference.

238. Defendants Kevin Sullivan and Lois M. Diagianni have engaged in a pattern of behavior that serve no legitimate purpose except to bully Plaintiffs into leaving a predominantly white neighborhood.

239. Defendants' actions serve no legitimate purpose other than to harass, annoy, alarm and intimidate Plaintiffs.

240. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

241. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## TWELFTH CAUSE OF ACTION
### PUNITIVE DAMAGES

242. The above paragraphs are here incorporated by reference.

243. Defendants have engaged in behavior against Plaintiff that is absolutely reprehensible and warrants a finding that Plaintiffs' conduct rises to the highest degree of reprehensibility.

244. It is respectfully submitted that no amount of compensatory damages that Plaintiff is awarded can offset any punitive damages that Plaintiff should be entitled to from Defendant.

245. Plaintiffs were affected, professionally, personally and emotionally by Defendants' conduct and punitive damages are warranted and necessary.

246. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

247. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## THIRTEENTH CAUSE OF ACTION
FRAUD
(Kevin Sullivan)

248. The above paragraphs are here incorporated by reference.

249. Kevin Sullivan has fraudulently raised claims against Plaintiffs that led to their arrest, prosecution, detention and separation from each other for extended periods of time that would not have occurred but for Kevin Sullivan's actions.

250. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

251. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

## FOURTEENTH CAUSE OF ACTION
ATTORNEY'S FEES COSTS AND DISBURSEMENTS

252. The above paragraphs are here incorporated by reference.

253. Based on the false allegations, misrepresentations and other acts and omissions by Defendants against Plaintiffs, Plaintiffs have incurred attorney's fees and costs in defending this malicious and frivolous prosecution, immigration removal proceedings, and will most likely incur costs and disbursements and additional attorney's fees as the matter progress.

254. Defendants should be required to pay for all attorney's fees, cost and disbursements incurred by Plaintiffs as the criminal matters had no valid basis and was reported and pursued solely for the purpose of harassing annoying and alarming Plaintiffs.

255. It is submitted that all Defendants should be held jointly and severally liable for the acts and omissions and issues of law set forth above as one could not have succeeded in their goals against Plaintiffs' interest without the individual actions of the other and the issues now being complained of are the direct result of the joint and individual acts of the Defendants.

256. As a result of Defendants acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to his business, and injury to goodwill and reputation, all of which are not yet fully ascertainable.

**WHEREFORE,** plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A.   An Order granting Plaintiffs' demand for judgment against Defendants jointly and severally; and

B.   An Order granting Plaintiffs' demand for a money judgment of $10,000,000 in favor of Plaintiffs against Defendants jointly and severally for each cause of action; and

C.   An Order granting Plaintiffs' request to proceed with their State Court claims simultaneously with the Federal Court claims being pursued in this matter; and

D.   An Order directing Defendants from engaging in any actions against Plaintiffs' interest that are intended to be retaliatory or otherwise punitive against Plaintiffs; and

E.   An Order awarding Plaintiffs punitive damages in an amount exceeding the

jurisdictional limits of all the lower courts for each cause of action,

C.      Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this

action; and

D.      Awarding Plaintiffs such other and further relief as this Court deems just and

proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED:      Brooklyn, New York
            May 25, 2018

Yours, etc.,
/s/ *Audrey A. Thomas, Esq.*
AUDREY A. THOMAS, ESQ.
THE LAW OFFICE OF AUDREY
THOMAS, PLLC
245-07 FRANCIS LEWIS BLVD
ROSEDALE, NY 11422
718-276-2729 (PH) 718-276-0196(FX)
audreythomasesq@gmail.com
_____

By: AUDREY A. THOMAS,
(4050548)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
RACHAEL BAILEY individually and as legal guardian of
N. B. a minor, MELVIN BAILEY individually and as legal
guardian of N. B. a minor,  BLAYTON WEBSTER


                         Plaintiffs,    **CERTIFICATE OF MERIT**

          -against-


KEVIN SULLIVAN; THE CITY OF NEW YORK; NEW
YORK CITY POLICE DEPARTMENT 63RD POLICE
PRECINCT, individually and as an agent of
THE NEW YORK CITY POLICE DEPARTMENT;
THE NEW YORK CITY POLICE DEPARTMENT;
VADIM KONTROROVICH (SHIELD #: 27420),
individually and as a member of the  NEW YORK CITY
POLICE DEPARTMENT 63RD POLICE PRECINCT;
LOIS M DIAGIANNI; ERIC GONZALEZ IN HIS
CAPACITY AS KINGS COUNTY DISTRICT
ATTORNEY; and THE LEGAL AID SOCIETY KINGS
COUNTY.
                         Defendants.
----------------------------------------------------------------------- x


WE, AUDREY A. THOMAS, ESQ., PLAINTIFFS' ATTORNEYS IN THIS ACTION, HAVE
CONSULTED WITH AT LEAST ONE DOCTOR WHO IS KNOWLEDGEABLE ON THE
RELEVANT ISSUE AND I HAVE CONCLUDED THAT THERE IS A REASONABLE
BASIS FOR THE COMMENCEMENT OF THIS ACTION.

Pursuant to CPLR 3012-a, we affirm this Certificate of Merit under penalties of perjury.


May 25, 2018


Yours, etc.,
*/s/ AUDREY A. THOMAS*
AUDREY A. THOMAS, ESQ.
THE LAW OFFICE OF AUDREY THOMAS PLLC
245-07 FRANCIS LEWIS BLVD
ROSEDALE, NY 11422
718-276-2729 (PH)
718-276-0196(FX)
audreythomasesq@gmail.com
_____

By: AUDREY A. THOMAS, (4050548)