UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
RACHAEL BAILEY, individually and as legal guardian of N.B., a minor; MELVIN BAILEY, individually and as legal guardian of N.B., a minor; BLAYTON WEBSTER,

     Plaintiffs,

 -against-

KEVIN SULLIVAN; THE CITY OF NEW YORK; THE NEW YORK CITY POLICE DEPARTMENT 63RD POLICE PRECINCT, individually and as an agent of THE NEW YORK CITY POLICE DEPARTMENT; VADIM KONTROROVICH (SHIELD #: 27420), individually and as a member of the NEW YORK CITY POLICE DEPARTMENT 63RD POLICE PRECINCT; LOIS M DIAGIANNI; ERIC GONZALEZ in his capacity as Kings County District Attorney; THE LEGAL AID SOCIETY KINGS COUNTY,

     Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 17-CV-05320 (FB) (PK)

Appearances:

*For the Plaintiffs*:

Audrey A. Thomas
The Law Offices of Audrey A. Thomas, P.C.
245-07 Francis Lewis Blvd.
Rosedale, NY 11422

*For the Defendants*:

Jacqueline C. Chavez
New York City Law Department
100 Church Street
New York, NY 10007

Karolina Wiaderna
Vigorito, Barker, Porter & Patterson, LLP
300 Garden City Plaza
Garden City, NY 11530

Anthony DuBartell
2550 S. Seamans Neck Road
Seaford, NY 11783

1

**BLOCK, Senior District Judge:**

Pending before the Court are three motions to dismiss a litany of claims brought against numerous defendants. Most of the claims sound in state law, but some are brought under 42 U.S.C. § 1983. The Court dismisses the § 1983 claims and dismisses the remaining claims for lack of subject-matter jurisdiction.

## I. Factual and Procedural Background

The plaintiffs are Rachael Bailey, Melvin Bailey, their minor child N.B. (collectively, "the Baileys"), and their adult son, Blayton Webster. The defendants are: (1) Kevin Sullivan and Lois M. DiGianni,[1] the plaintiffs' neighbors; (2) the Legal Aid Society; and (3) the City of New York, the 63rd Precinct of the New York Police Department ("NYPD"), NYPD Officer Vadim Kontrorovich, and Eric Gonzalez, sued in his capacity as the District Attorney of Kings County (collectively, "city defendants"). The Court treats the allegations as true for the purposes of a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

For several years, the Baileys lived next door to Sullivan, whose house was owned by DiGianni. The Baileys' and Sullivan's relationship grew acrimonious: he ousted them from a shared driveway, deposited garbage and debris on their lawn,

---

[1] The caption spells DiGianni's name as "Diagianni," but her brief advises that it is misspelled. This Order uses the correct spelling.

damaged their property, and shouted racial profanities at them. On several occasions, these incidents led to police involvement. Two incidents are relevant to these motions.

First, on May 10, 2011, Sullivan threw garbage onto Webster's car when he was visiting his parents for dinner. This resulted in a verbal altercation between the two men, with Sullivan aggressively yelling racial slurs at Webster. The police responded to a disturbance call and Sullivan (allegedly falsely) told them that Webster assaulted him and that Mrs. Bailey chased him with a machete. Based on this report, Bailey and Webster were arrested and charged with various state law crimes. They were represented by the Legal Aid Society, which successfully negotiated a plea deal of disorderly conduct.[2] Webster and Bailey were both sentenced on November 27, 2012. An order of protection was also issued, requiring them to keep away from Sullivan.

Second, on May 2, 2013, Mrs. Bailey and Sullivan got into another verbal altercation. Bailey called 911 and Officer Kontrorovich responded to the call. After speaking with Sullivan, he placed Bailey under arrest. Once released from police custody, she was turned over to Immigration and Customs Enforcement ("ICE")

---

[2] The Legal Aid Society represents that Webster's lawyer was not a Legal Aid Society lawyer but rather a private attorney assigned to Webster pursuant to New York County Law Article 18-B. Because this is a factual dispute, the Court must credit the plaintiff's allegation at this stage.

3

custody and immediately placed in removal proceedings. On September 11, 2014, Bailey was acquitted of all criminal charges. Although she was released from ICE custody several months after her arrest, she still remains in removal proceedings despite her acquittal. At her second trial, as well as in the immigration matters, Bailey was represented by private counsel at her own expense.

On September 12, 2017, the plaintiffs filed this lawsuit. The operative Second Amended Complaint ("SAC") lists the following causes of action, some of which are noted as pertaining only to particular defendants: (1) "42 U.S.C. § 1983"; (2) "Municipal Liability"; (3) "Ineffective Assistance of Counsel" (against the Legal Aid Society); (4) "Conversion" (against DiGianni and Sullivan); (5) "Racial Profiling and Discrimination"; (6) "Malicious Prosecution"; (7) "Harassment"; (8) "Failure to Properly Investigate"; (9) "Tortious Interference with Contracts"; (10) "Intentional Infliction of Emotional Distress"; (11) "Bullying"; (12) "Punitive Damages"; (13) "Fraud" (against Sullivan); and (14) "Attorney's Fees, Costs, and Disbursements." All defendants subsequently move to dismiss.

## II. Discussion

The only claims brought under federal law are brought under 42 U.S.C. § 1983. Although some of the other "causes of action," such as "municipal liability," "racial profiling and discrimination," and "ineffective assistance of counsel" are tied

4

to the § 1983 claims, those "causes of actions" are really theories of liability under § 1983 and do not represent standalone federal claims.

A. <u>City Defendants (Statute of Limitations)</u>

Statutes of limitation for § 1983 claims are dictated by state law; New York sets it at three years. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). The date of accrual for § 1983 claims, however, is governed by federal law, which starts the clock "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.3d 185, 191 (2d Cir. 1980)). New York law tolls the statute for minors, N.Y. C.P.L.R. 208, but because the tolling is "personal" to the minor, it does not extend to any derivative claims, *Nardi v. County of Nassau*, 18 A.D. 520, 521 (N.Y. App. Div. 2005).

Here, the § 1983 claims against the city defendants stem from the actions surrounding the two arrests and the associated criminal proceedings. The second arrest, however, took place on May 2, 2013—more than four years prior to the filing of this lawsuit. To the extent that the plaintiffs assert any violations after that date—*see, e.g.*, SAC ¶ 147 (alleging that the Kings County District Attorney's Office refused to turn over exculpatory evidence during the second trial)—the latest possible accrual date for those acts is the date of acquittal, September 11, 2014. Because the action was not brought until September 12, 2017, the § 1983 claims are time-barred.

The plaintiffs point to the infant tolling statute, but because the infant tolling statute is personal to the infant, it cannot toll the statute of limitations for the parents for any derivative claims. *See Nardi*, 18 A.D. at 521 (mother's malpractice claim for infant was time-barred notwithstanding the infancy toll because the claim was derivative). Meanwhile, there are no allegations in the complaint that city defendants violated N.B.'s own constitutional rights. She was not arrested or targeted by the city defendants. The harm that she is alleging (which arose after the witness of her mother's arrest, *see* SAC ¶¶ 127–31) is covered by the state law claims, including intentional infliction of emotional distress.

Finally, plaintiffs allude to the continuing violation doctrine. *See* SAC ¶ 15. This doctrine "provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). The doctrine can be invoked when multiple discrete acts collectively result in some injury. However, it can only apply when at least one non-time-barred act occurred within the statutory time-limit. *Id.* Because the last alleged act that is potentially violative occurred more than three years prior to the filing date, all of the § 1983 claims against the city defendants are time-barred.

B. <u>Remaining Defendants (Color of State Law)</u>

The § 1983 claims against the remaining defendants are dismissed because they were not acting under color of state law, as required by the statute. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 928 (1982).

The Legal Aid Society is only being charged in its capacity as Mrs. Bailey's and Webster's counsel at their first criminal trial. It is settled law that public defenders do not act under color of state law for § 1983 purposes, at least in their capacity as counsel. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.").

Sullivan and DiGianni are private parties. They are not employed by the state and did not purport to carry out any actions on behalf of the state. Accordingly, Sullivan and DiGianni are not amenable to suit under § 1983, either.

C. <u>State Law Claims</u>

The remaining claims are all brought under state law. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if [it] has dismissed

7

all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Supreme Court has noted, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 n.7 (1988).

Here, all the factors weigh in favor of dismissal. The case is still in its very preliminary stages. All of the parties are New York residents asserting purely New York state law claims. It would be equally convenient and fair to litigate in state court as in federal court. *See, e.g.*, *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Hedges v. Town of Madison*, 456 F. App'x 22, 24 (2d Cir. 2012) (dismissal was appropriate "given the early stages of [the] proceedings and our deference to state courts" where the only claims were Connecticut state law claims). Accordingly, the Court declines to exercises supplemental jurisdiction over the remaining claims.

### III. Conclusion

The Court dismisses the § 1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6). As against the city defendants, the claims are dismissed as time-

barred.  As against the remaining defendants, they are dismissed because the defendants did not act under color of law.  The Court declines to exercise supplemental jurisdiction over the remaining claims, all of which are brought under state law.  Accordingly, the Court dismisses those claims without prejudice.

**SO ORDERED.**

                                           _/S/ Frederic Block_____
                                           FREDERIC BLOCK
                                           Senior United States District Judge

Brooklyn, New York
January 10, 2019